IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–02572–EWN–BNB


CARR OFFICE PARK, LLC,

      Plaintiff,

v.

CHARLES SCHWAB & CO., INC., a
California corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a real estate contract dispute.  Plaintiff Carr Office Park, LLC has brought suit against Defendant Charles Schwab & Co., Inc., alleging that Defendant: (1) breached a contract to lease a portion of a parking garage; (2) was unjustly enriched by said breach; and (3) is obligated to execute a lease agreement tendered by Plaintiff.  This matter is before the court on: (1) "Defendant's Motion for Summary Judgment," filed October 5, 2006; and (2) "Plaintiff's Motion for Partial Summary Judgment and Opening Brief," filed the same day.  Jurisdiction is premised upon 28 U.S.C. § 1332 (2006).

**FACTS**

***1.    Procedural History***

On November 29, 2005, Plaintiff filed suit in the Arapahoe County District Court in

Colorado, alleging that Defendant had breached a real estate option agreement (the "Option

Agreement") concerning the rental of a parking structure.  (Notice of Removal, Ex. 4 [Compl.]

[filed Dec. 19, 2005].)  Plaintiff asserted claims for breach of contract, unjust enrichment, and a

declaratory judgment.  (*Id.*)  On December 19, 2005, Defendant removed the action to this court.

(*Id.* at 1.)  On January 17, 2006, Defendant filed its answer and counterclaim, requesting that the

court declare either that: (1) Defendant has no obligation to Plaintiff with respect to the parking

structure; or (2) the parties are obligated to enter into a lease for the parking structure under

certain specified terms.  (Answer and Countercl. [filed Jan. 17, 2006].)  On January 27, 2006,

Plaintiff answered Defendant's counterclaim.  (Reply [sic] to Def. Charles Schwab & Co., Inc.'s

Countercl. [filed Jan. 27, 2006].)

On October 5, 2006, Defendant filed a motion for summary judgment, asserting: (1) the

Option Agreement is not the source of any contractual obligations between the parties with

respect to the parking structure; (2) the parties never agreed upon essential elements of a lease for

the parking structure; (3) Plaintiff's unjust enrichment claim fails because Defendant received no

benefit from Plaintiff and Plaintiff has no evidence of the fair market value of any allegedly

conferred benefit; and (4) Defendant has no obligation to Plaintiff under the Option Agreement or

otherwise with respect to the parking structure.  (Br. in Supp. of Def.'s Mot. for Summ. J. at

12–25 [filed Oct. 5, 2006] [hereinafter "Def.'s Br."].)  On November 11, 2006, Plaintiff filed its

response.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. and Supporting Br. [filed Nov. 8, 2006]

[hereinafter "Pl.'s Resp."].)  On November 27, 2006, Defendant filed a reply.  (Def.'s Reply Br. in

Supp. of its Mot. for Summ. J. [filed Nov. 27, 2006] [hereinafter "Def.'s Reply"].)

On October 5, 2006, Plaintiff filed a motion for partial summary judgment on its breach of

contract claim, arguing that Defendant breached the Option Agreement by failing to pay rent for

the parking structure.  (Pl.'s Mot. for Partial Summ. J. and Opening Br. at 7–9 [filed Oct. 5,

2006] [hereinafter "Pl.'s Br."].)  On October 25, 2006, Defendant filed a response brief.  (Def.'s

Brie F [sic] in Opp'n to Mot. for Partial Summ. J. [filed Oct. 25, 2006] [hereinafter "Def.'s

Resp."].)  On November 27, 2006, Plaintiff filed a reply.  (Reply in Supp. of Pl.'s Mot. for Partial

Summ. J. [filed Nov. 27, 2006] [hereinafter "Pl.'s Reply"].)  This matter is fully briefed.

## 2.    *Factual Background*

Plaintiff is the successor in interest to all rights of CarrAmerica Development and

Construction, Inc. ("CDC") in the Option Agreement, as amended, by and between CDC and

Defendant.  (Pl.'s Br., Statement of Undisputed Material Facts [hereinafter "SOF"] ¶ 1; *admitted*

*at* Def.'s Resp., Resp. to Statement of Undisputed Material Facts [hereinafter "Resp. to SOF"] ¶

1.)  The Option Agreement grants Defendant several options to require Plaintiff to build and lease

to Defendant new buildings in an office park in Arapahoe County, Colorado.  (*Id.*, SOF ¶ 2;

*admitted at* Def.'s Resp., Resp. to SOF ¶ 2.)  Under the Option Agreement, if Defendant

exercises an expansion option, the following paragraph provides for the creation of a lease for

new buildings:

> [Plaintiff] shall deliver to [Defendant] a lease for the New Building ("New Building
> Lease") . . . . [Plaintiff] and [Defendant] shall execute and deliver such New
> Building Lease within a reasonable period of time . . . . The failure of the parties
> to execute and deliver the New Building Lease within such time shall not affect the
> validity of such Expansion Notice and [Plaintiff's] and [Defendant's] obligation to
> lease the New Building on the terms and conditions of the New Building Lease.
> The lease of the New Building shall be on . . . the same terms and conditions of the
> Building III Lease . . . .

(Def.'s Br., Ex. A–1 ¶ 2.9 [Option Agreement] [emphasis in original].)  Apparently, the "Building

III Lease" was a prior agreement between one or both of the parties.  (*See id.*)

On June 21, 2000, Defendant exercised an expansion option requiring Plaintiff to build a

new office site to be known as "Panorama IV" (the "Panorama IV Expansion Option").  (Pl.'s

Br., SOF ¶ 6; *admitted at* Def.'s Resp., Resp. to SOF ¶ 6.)  Effective March 29, 2002, Plaintiff

and Defendant entered into Amendment Three to the Option Agreement, which provides:

> Promptly following the date of this Third Amendment, [Plaintiff] and [Defendant]
> shall enter into a New Lease for Panorama IV, using the Lease Form, subject to
> the modifications set forth below . . . .  [Defendant's] obligation to lease Panorama
> IV on the terms required above is unconditional.

(Def.'s Br., Ex. A–5 ¶ 2 [Amend. Three].)  As defined in Amendment Two to the Option

Agreement, the "Lease Form" is a prior lease agreement between the parties, the "Panorama VIII

Lease."  (*See id.*, Statement of Undisputed Material Facts [hereinafter "SOF"] ¶¶ 3–4; *admitted at*

Pl.'s Resp., Resp. to Statement of Undisputed Material Facts [hereinafter "Resp. to SOF"] ¶¶

3–4.)  The Lease Form is a lengthy document that provides for the lease from Plaintiff to

Defendant of an office building, parking structure, parking lot, land, and all improvements to the

land.  (*See id.*, Ex. A–4 at 1 [Lease Form].)

Case 1:05-cv-02572-EWN-BNB   Document 51   Filed 06/08/07   USDC Colorado   Page 5 of 22

Subsequently, Defendant reconsidered its need for a new building and entered into negotiations with Plaintiff to revoke its exercise of the Panorama IV Expansion Option. (*Id.*, SOF ¶ 8; *admitted in relevant part at* Pl.'s Resp., Resp. to SOF ¶ 8.) On an unspecified date, Plaintiff informed Defendant that it had a separate agreement with the Regional Transportation District ("RTD"), pursuant to which Plaintiff had committed to lease out part of the parking structure initially planned to be associated with the Panorama IV office site. (*Id.*, SOF ¶ 7; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 7.)

Effective July 31, 2003, Plaintiff and Defendant entered into Amendment Four to the Option Agreement, which revoked the exercise of that portion of the Panorama IV Expansion Option relating to buildings and improvements other than the parking structure. (Pl.'s Br., SOF ¶¶ 10–12; *admitted at* Def.'s Resp., Resp. to SOF ¶¶ 10–12.) Amendment Four further provided that: (1) "[u]pon completion of the [parking structure], [Defendant] shall be required to lease from [Plaintiff] the parking spaces which are contained in the two lowest levels of the [parking structure];" and (2) Defendant's obligation to pay rent for the parking spaces would commence on the date Plaintiff tendered possession to Defendant. (Def.'s Br., Ex. A–7 ¶ 6 [Amend. Four].) Finally, Amendment Four provided:

> [Plaintiff] and [Defendant] shall, in good faith, negotiate and finalize a lease document . . . based on the Lease Form . . . concerning [Defendant's] lease of the [p]arking [s]paces which requires [Defendant] to pay [Plaintiff] an annual triple net rent for use of the [p]arking [s]paces calculated as the product of the Total Project Costs (as such term is defined in the Lease Form) for [Plaintiff's] cost of the construction of [Defendant's] portion of the [parking structure] and the [r]eturn [r]ate for Panorama IV (which equals 9.3% per the terms of the Third Amendment). Landlord estimates that such rent will equal $502,200.00 per annum . . . .

(*Id.*, Ex. A–7 ¶ 6 [Amend. Four] [emphasis added].)  Eventually, Defendant paid in excess of seven million dollars to Plaintiff for the partial termination of the Panorama IV Expansion Option. (*Id.*, SOF ¶ 27; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 27; *see id.*, Ex. A–10 at 1 [Termination Payment Letter].)

By letter dated January 26, 2004, Plaintiff notified Defendant that it had commenced construction of the parking structure.  (*Id.*, SOF ¶ 12; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 12.)  The letter triggered negotiations between the parties regarding a lease for the parking structure.  (*Id.*, SOF ¶ 13; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 13.)

On March 5, 2004, Plaintiff's representative, Lisa Foyston, transmitted to Defendant a draft lease for the parking structure (the "March Fifth Draft"), redlined against a previously proposed lease for the Panorama IV complex.[1]  (*Id.*, SOF ¶ 14; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 14.)  In the March Fifth Draft, Plaintiff intentionally deleted Articles Thirty-Three ("Tenant's Right to Purchase the Premises") and Thirty-Four ("Tenant's Right to First Offer"). (*Id.*, SOF ¶ 15; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 15; *see id.*, Ex. A–9, pt. 2 at 88, 93 [March Fifth Draft].)  Defendant did not accept the March Fifth Draft, and the parties continued to negotiate over the course of the next year.  (*Id.*, SOF ¶ 16; *admitted in relevant part at* Pl.'s Resp., Resp. to SOF ¶ 16.)  Plaintiff tendered at least one additional draft lease to Defendant, which the parties discussed in a conference call in November 2004.  (*Id.*, SOF ¶ 17; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 17.)  Among other things, the discussion touched upon: (1) the extent

---

[1]The previously proposed Panorama IV Lease was based on the Lease Form.  (*Compare* Def.'s Br., Ex. A–9 [March Fifth Draft], *with* Ex. A–4 [Lease Form].)

of the premises to be leased; (2) who would be obligated to clean and maintain the floors; (3)

excess rental; and (4) the existence of an extension option.  (*See id.*, Ex. A–11 [11/23/04 Email

from Def. to Pl.].)

Negotiations continued at least through March 2005.  (*Id.*, SOF ¶ 24; *deemed admitted at*

Pl.'s Resp., Resp. to SOF ¶ 24.)[2]  Apparently, these negotiations failed.  Although the parking

structure was subsequently completed and Plaintiff tendered possession of the lower two floors to

Defendant, Defendant never occupied the parking structure nor paid Plaintiff any rent therefor.

(Pl.'s Br., SOF ¶¶ 16, 18–19; *admitted in relevant part at* Def.'s Resp., Resp. to SOF ¶¶ 16,

18–19.)

## ANALYSIS

### 1.     *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works,*

*Inc.*, 36 F.3d at 1517.  The moving party bears the initial burden of showing an absence of

---

[2]Plaintiff denies Defendant's proffer, asserting it "is not in possession of information either
confirming or contradicting the facts alleged."  (Pl.'s Resp., Resp. to SOF ¶ 24.)  This so-called
"denial" is singularly bewildering.  Ask any first-year law student: an absence of knowledge is
insufficient to controvert a summary judgment movant's factual assertions.  *See Concrete Works,*
*Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  That is why we have
discovery.  Defendant's well-supported proffer is hereby deemed admitted.

evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.**     ***Evaluation of Claims***

    **a.**     ***Breach of Contract***

      Plaintiff argues it is entitled to summary judgment because the language of the Option Agreement and amendments thereto obligated Defendant to pay rent "without regard to the execution of any lease specific to the [parking structure]." (Pl.'s Br. at 8.) Defendant, on the other hand, contends that, per the terms of the Option Agreement, only a lease specific to the parking structure would require it to pay rent to Plaintiff. (Def.'s Br. at 15.) Defendant further

-8-

contends that the Option Agreement itself cannot be the source of an obligation to pay rent because it leaves unresolved material elements of a lease for the parking structure, such as rent. (*Id.*)  Thus, argues Defendant, the Amendment Four provision whereby the parties agreed to negotiate and finalize a lease for the parking structure constitutes an unenforceable "agreement to agree."  (*Id.*)

The central issue in this case is whether the Option Agreement, which is undisputedly a binding agreement governing various aspects of the parties' broader relationship, evinces an accord between the parties with respect to their rights and obligations concerning the parking structure. For the reasons stated below, the court finds that the undisputed facts and the unambiguous terms of the Option Agreement confirm that no such accord was reached.

### (1)    Legal Overview

A contract is a compact "in which a party binds himself to do, or not to do, a particular thing."  *Fletcher v. Peck*, 6 Cranch (10 U.S.) 87, 136 (1810).  The construction of a written instrument is a matter of law.  *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990).  The primary goal of contract interpretation is to determine and effectuate the intention of the parties.  *May v. United States*, 756 P.2d 362, 369 (Colo. 1988).  "'If essentials are unsettled, and no method of settlement is agreed upon, there is no contract . . . .  If the writing leaves the agreement of the parties vague and indefinite as to an essential element thereof, it is not a contract and cannot be made one by parol.'"  *N.Y. Life Ins. Co. v. K N Energy*, 80 F.3d 405, 409 (10th Cir. 1996) (quoting *Greater Serv. Homebuilders' Inv. Ass'n v. Albright*, 293 P. 345, 348 [Colo. 1930] [en banc]) (ellipsis in original).

To have an enforceable contract, it must appear that no further negotiations are required

to work out important and essential terms. *K N Energy*, 80 F.3d at 409 (citing *Am. Mining Co. v.*

*Himrod-Kimball Mines, Co.*, 235 P.2d 804, 807–08 [Colo. 1951] [en banc]; *Pierce v. Marland*

*Oil Co.*, 278 P. 804, 806 [Colo. 1929]).  While parties may agree on some issues, the absence of

agreement on other material issues prevents the formation of a binding contract. *Am. Mining Co.*,

235 P.2d at 808; *see* Restatement (Second) of Contracts § 33(2) (1981) (stating contract terms

are reasonably certain "if they provide a basis for determining the existence of a breach and for

giving an appropriate remedy").  Indeed, "agreements to agree" in the future are generally

unenforceable because the court cannot force parties to come to an accord. *DiFrancesco v.*

*Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. Ct. App. 2001) (citing *Griffin v. Griffin*,

699 P.2d 407 [Colo. 1985]); *see Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417

N.E.2d 541, 543 (N.Y. 1981) (stating "a mere agreement to agree, in which a material term is left

for future negotiations, is unenforceable"); *Harmon v. Greenwood*, 596 P.2d 636, 639 (Utah

1979) (stating agreement to agree is "unenforceable because [it] leave[s] open material terms for

future consideration, and the courts cannot create these terms for the parties").

### (2)    *Application*

Although the Option Agreement contained provisions aimed at bypassing impasses in lease

negotiations, the subsequent discussion will show that the efficacy of such fallback provisions was

snarled by the differences created by: (1) separating the parking structure from an associated

office complex; and (2) leasing the parking structure to more than one tenant.  Specifically, the

Option Agreement provided that if Defendant exercised an expansion option, "failure of the

parties to enter into a [lease agreement] shall not affect . . . the parties' rights and obligations with respect to a New Building."  (Def.'s Br., Ex. A–1, pt. 1 ¶ 2.5(1) [Option Agreement]; *accord id.*, Ex. A–1, pt. 1 ¶ 2.9 [Option Agreement].)  "[T]he parties' rights and obligations" were to remain unaffected notwithstanding a failure to enter into a lease agreement because, if the parties failed to execute a new lease, then "[t]he lease of the New Building shall be on (and the New Lease shall contain) the same terms and conditions of the [Lease Form] . . . ."[3]  (*Id.*, Ex. A–1, pt. 1 ¶ 2.9 [Option Agreement], Ex. A–3 ¶ 2 [Amend. Two].)  Together, the Option Agreement and Lease Form furnished the framework for future agreements.  (*See id.*)  Additionally, in the event of an impasse, the Lease Form was to serve as a fallback lease agreement.  (*See id.*, Ex. A–1, pt. 1 ¶ 2.9 [Option Agreement].)  Thus, the Option Agreement provided the parties the flexibility to renegotiate terms of future lease agreements, but it also provided certainty in the form of fallback terms and conditions that would govern should negotiations founder.  This certainty, however, was predicated on a presumption of parity between past and future lease arrangements.

The unamended Option Agreement was written for a very different set of circumstances than those that had played out by the time the parties executed Amendment Four.  Although Defendant initially exercised the Panorama IV Expansion Option, triggering an "unconditional" obligation to lease the entirety of the Panorama IV office complex (including the associated parking structure), it is undisputed that Defendant subsequently paid over seven million dollars to

---

[3]As noted above, Amendment Two provided that the Panorama VIII Lease would replace the Building III Lease referenced in paragraph 2.9 as the "Lease Form" for the Panorama IV buildings.  (Def.'s Br., Ex. A–3 ¶ 2 [Amend. Two], Ex. A–4, pts. 1–4 [Lease Form].)

revoke its full exercise of the expansion option — but only with respect to the office building and not the parking structure.  (*Id.*, Ex. A–5 ¶ 2 [Amend. Three], Ex. A–7 ¶ 6 [Amend. Four], Ex. A–10 at 1 [Termination Payment Letter].)  The partial nature of the revocation is connected to the undisputed fact that, at some point between the exercise of the Panorama IV Expansion Option and the subsequent partial termination, Plaintiff entered into a separate contract giving RTD the right to use the upper levels of the parking structure.  (*Id.*, Ex. A–7 ¶ 6 [Amend. Four].) While the Lease Form contained an agreement to lease an office complex that included land, an office building, a parking structure, a parking lot, and other improvements to the land, Amendment Four merely envisioned a lease of "the parking spaces . . . contained in the two lowest levels of the [parking structure]."  (*Id.*, Ex. A–4 at 1 [Lease Form]; Ex. A–7 ¶ 6 [Amend. Four].)  Thus, when Plaintiff and Defendant began negotiating a lease for the parking structure, they faced the task of revising the Lease Form's allocation of rights and obligations for a single-tenant office complex to fit a multi-tenant parking garage.  (*See id.*)  Of course, the task of reconciling the unequivocally substantial differences between the past agreement and the contemplated future agreement proved difficult.

Amendment Four further states that Defendant will be required to pay "an annual triple net rent for use of the [p]arking [s]paces calculated as the product of the Total Project Costs (as such term is defined in the Lease Form) . . . ."  (*Id.*, Ex. A–7 ¶ 6 [Amend. Four].)  "Total Project Costs" is defined as:

> the sum of the following items . . . incurred by [Plaintiff] in connection with the acquisition of the [l]and, hard and soft costs of construction of the [b]uilding and all other improvements on the [l]and, the properly allocable share of the costs of

> construction of infrastructure for the [l]and, the costs of entering into the [l]ease,
> and the cost of operating and maintaining the Premises. . . .

(*Id.*, Ex. A–4, pt. 4, Appendix H–5 ¶ 1 [Lease Form].)  And Total Project Costs are just one aspect of "Rent," the definition of which spans fifteen pages of the Lease Form, including numerous cross-references and various lengthy incorporated appendices.  (*See id.*, Ex. A–4, pt. 1 at 23–38, pt. 4 Appendices F, G, H [Lease Form].)

With the foregoing in mind, the court turns to Plaintiff's contention that the "Option Agreement require[s] [Defendant] to pay rent without regard to [the] execution of a separate [parking structure] lease."  (Pl.'s Reply at 6.)  This position is clearly premised on a wishful misreading of the Option Agreement.  The Lease Form provides the essential lease term of "Rent" for a single occupant office structure, not for a multi-occupant parking structure.  Consequently, this and other provisions of the Lease Form did not translate well to a lease for the parking structure.  Thus, absent the finalized fruit of the "good faith" negotiations required by Amendment Four, no obligation to pay rent could have plausibly arisen because the Lease Form itself contained no final accord between the parties as to *what the rent would be*.  While the Option Agreement and Amendments thereto unequivocally, repeatedly state the parties' mutual understanding that Defendant was not free to walk away once it exercised an expansion option, this court cannot, as Plaintiff suggests is appropriate, find that Defendant is obligated to pay rent under an agreement that expressly contemplated that the amount of rent to be paid (not to mention other terms essential to any final lease arrangement) would subsequently be "negotiate[d] and finalize[d] [in] a lease document" to be based on the Lease Form, which itself contemplated a

very different lease arrangement than the arrangement that could be expected with respect to the parking structure.  Moreover, the amended Option Agreement failed to account adequately for the impossibility, in the event of an impasse, of simply relying upon an office complex lease to govern the parties' rights and obligations concerning a shared parking structure.  Indeed, because of (1) the fundamental changes wrought by Defendant's partial revocation of the Panorama IV Expansion Option, and (2) Plaintiff's decision to lease part of the parking structure to RTD, the fallback provisions established in the original Option Agreement were, in effect, eviscerated.[4]

Thus, the changed circumstances (to which each party's actions contributed), served to transform an arrangement with the certainty of a fallback lease into the mere "agreement to agree" memorialized in Amendment Four.[5]  For obvious reasons, this court cannot force the parties back to the bargaining table based on such an agreement — nor can it devise a bargain on the parties' behalf.  *See Griffin*, 699 P.2d at 409; 17A Am. Jur. 2d Contracts § 39 (West 2007) ("If any essential term is left open for future consideration, there is no binding contract, and an agreement to agree is not enforceable.").  The agreement embodied by the amended Option Agreement unquestionably required "further negotiations . . . to work out important and essential terms" and,

---

[4]Plaintiff contends that "**every time** the Option Agreement requires a new building lease, the lease form must be altered to adapt and make it specific to the new building."  (Pl.'s Reply at 6 [emphasis in original].)  This may be true, but as the parties' failed negotiations inevitably suggest, fitting the square peg of a lease for parking spaces into the round hole of a lease for an office complex rendered the Lease Form an ineffective fallback.

[5]Notably absent from Amendment Four was any provision providing for liquidated damages in the event that the parties failed to satisfy their obligation to "negotiate and finalize a lease document."  (*See* Def.'s Br., Ex. A–7 ¶ 6 [Amend. Four].)

thus, is not enforceable as it applies to the parking structure.  *See Am. Mining Co.*, 235 P.2d at

807–08.  There is no doubt that the differences between the Lease Form and an anticipated

parking structure lease are sufficiently great to render the Option Agreement "vague and indefinite

as to [the] essential element[s]" of a lease for the parking structure.  *Albright*, 293 P. at 348–49.

Thus, because the "essentials [were] unsettled, and no method of settlement [was] agreed upon,

there is no contract."  *Id.* at 348.  Consequently, the court finds as a matter of law that the Option

Agreement and Amendments thereto are indefinite with respect to Defendant's rental obligations

*vis-à-vis* the parking structure.

Plaintiff makes a handful of weak arguments counseling against this conclusion.  First,

Plaintiff attempts to create an issue of fact as to whether the parties agreed on the definition of

"Premises."  (*See* Pl.'s Resp. at 4, 12.)  Plaintiff makes this move because "the cost of operating

and maintaining the Premises" is one factor in the Lease Form's calculation of rent — a material

element of any lease agreement.  (*See* Def.'s Br., Ex. A–4, pt. 4, Appendix H–5 ¶ 1 [Lease

Form].)  The court sees no such issue of fact.  In the November 23, 2004 email from Defendant's

representatives to Plaintiff's representatives, Defendant expressed its reservations with respect to

the extent of the "Premises."  (*Id.*, Ex. A–11 at 1 [11/23/04 Email from Def. to Pl.].)  Specifically,

Defendant noted: "Parking [s]tructure means [l]evels [one] and [two] of the [parking structure],

but Premises means [l]and, [p]arking [s]tructure, and other improvements that provide ingress and

egress to the [p]arking [s]tructure."  (*Id.*)  Further, in deposition, Plaintiff's representative in the

negotiations in which this email was discussed testified as such:

-15-

> Q:     So it's fair to say that [the definition of Premises] was still an open item at
>        the end of the conference call that you were taking notes for?
> A:     Yes.

(*Id.*, Ex. A–6 at 182–83 [Dep. of L. Foyston].)  Without explanation, Plaintiff baldly asserts that

the above-quoted email and testimony do not support the allegation that the parties failed to reach

an agreement on the definition of "Premises."  (Pl.'s Resp., Resp. to SOF ¶ 18.)  Plaintiff

furnishes no evidentiary basis whatsoever for this or its further contention that "the parties dispute

whether they reached an agreement on the definition of the premises to be leased and,

consequently, the precise rental to be paid." (*Id.* at 12.)  Try as Plaintiff might, its "unsupported

conclusory allegations . . . do not create a genuine issue of fact" on summary judgment.  *Annett v.

Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004).  Plaintiff's failure to marshal any evidence

suggesting that the parties did, in fact, reach an agreement with respect to the definition of

"Premises" serves to underscore the only reasonable conclusion to draw from the evidence

regarding the parties' negotiations: there was no meeting of the minds with respect to the essential

terms of a lease for the parking structure.[6]

Next, Plaintiff argues that language in Amendment Four requiring the parties to negotiate

and finalize a parking structure lease "in good faith" is "no different than the prior provisions of

the Option Agreement requiring the execution and delivery of a new building lease."  (Pl.'s Reply

at 7.)  Plaintiff notes that under Colorado law, an implied covenant of good faith and fair dealing

---

[6]Even had the parties come to an accord on the definition of "Premises," their undisputed
failure to agree on whether Defendant would be entitled to provisions giving it an option to
purchase the leased premises would still snarl an accord.  (*See Facts* § 2, *supra*.)  Indeed, the
exclusion or inclusion of such provisions could feasibly bear upon rental price.

exists in all contracts and concludes therefrom that the "good faith" language in Amendment Four

constitutes an express memorialization of this covenant such that Amendment Four "did not alter

the parties' pre-existing contractual obligations." (*Id.*)  Plaintiff's foray into the law of implied

covenants is an irrelevant sideshow, and the court wastes no further time on it.

The relevant aspect of Amendment Four is not its reference to "good faith," but rather its

requirement that the parties "negotiate and finalize" a lease for the parking structure.  Plaintiff

attempts to equate Amendment Four to "prior provisions" of the Option Agreement — which

Plaintiff neglects to quote or cite — "requiring the execution and delivery of a new building

lease." (*Id.*)  This is entirely unpersuasive.  Presumably, Plaintiff references paragraphs 2.5 and

2.9 of the Option Agreement, which provide that, in the event the parties fail to execute a new

lease for new office complexes, "[t]he lease of the New Building shall be on (and the New Lease

shall contain) the same terms and conditions of the [Lease Form]." (Def.'s Br., Ex. A–1, pt. 1 ¶¶

2.5(1), 2.9 [Option Agreement], Ex. A–3 ¶ 2 [Amend. Two].)  However, as noted above,

Defendant's partial revocation of its exercise of the Panorama IV Expansion Option and Plaintiff's

decision to lease part of the parking structure to RTD so changed the circumstances from those

existing when the parties made their original agreement that any expectation that the Lease Form

could serve as a fallback in the absence of an executed parking structure lease was entirely

unrealistic.  Indeed, absent the markedly changed context that presented itself at the time

Amendment Four was executed, there would have been no reason to require good faith

negotiation and finalization because the Lease Form would have simply controlled in the event of

an impasse. (*See id.*, Ex. A–7 ¶ 6 [Amend. Four].)  The absence of any language in the

unamended Option Agreement requiring good faith negotiation and finalization only drives this unfortunate reality home.  (*See id.*, Ex. A–1 [Option Agreement].)

Finally, Plaintiff argues that a construction of the Option Agreement that does not obligate Defendant to pay rent for the parking structure would fail to give effect to all of the Option Agreement's terms because such a construction would ignore provisions stating that Defendant's obligation to rent a new building arises regardless of the execution of a lease.  (Pl.'s Reply at 7.) It is true that courts tasked with contract interpretation are required to give effect to all of an instrument's provisions.  *Town of Estes Park v. N. Colo. Water Conservancy Dist.*, 677 P.2d 320, 326 (Colo. 1984).  Nevertheless, absent an enforceable accord with respect to the terms of a lease, provisions requiring Defendant to lease the parking structure are unenforceable.  *See Am. Mining Co.*, 235 P.2d at 808 (stating absence of agreement on material issues prevents the formation of a binding contract).  In the context of this dispute, these purportedly binding provisions boil down to an agreement to be bound by an "agreement to agree."  The court cannot reach into this hall of mirrors and pull out a meaningful, enforceable accord.

Accordingly, based on both the undisputed facts and the court's construction of the amended Option Agreement's unambiguous terms, the court finds that no genuine issue of material fact exists and, consequently, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

### b.    *Unjust Enrichment*

Defendant moves for summary judgment on Plaintiff's unjust enrichment claim, arguing Plaintiff has failed to come forward with evidence: (1) that Defendant received a benefit from Plaintiff's construction of the parking structure; and (2) of the fair market value of the benefit Plaintiff claims to have conferred upon Defendant. (Def.'s Br. at 22–24.)  In response, Plaintiff contends the benefit Defendant has obtained was the right to possess and use the parking structure. (Pl.'s Resp. at 15.)  Plaintiff proceeds to argue that "[t]he fact that [Defendant] has declined to avail itself of that right does not erase the benefit conferred upon it of the right to do so at its option." (*Id.*)  Additionally, Plaintiff argues that the Option Agreement itself constitutes evidence of the fair market value of the benefit of this right. (*Id.* at 15–16.)  The court need only consider Defendant's first argument.

Unjust enrichment is a form of quasi-contract or a contract implied in law.  *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (citing *Dove Valley Bus. Park Assocs., Ltd. v. Bd. of County Comm'rs*, 945 P.2d 395, 403 [Colo. 1997]).  As such, it is an equitable remedy and does not depend on any contract, oral or written.  *Id.* (citing *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1097 [Colo. 1982]).  The cause of action does not require any promise or privity between the parties.  *Id.* (citing *Wistrand v. Leach Realty Co.*, 364 P.2d 396, 397 [Colo. 1961]).  Rather, it is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another.  *Id.* (citing *Cablevision*, 649 P.2d at 1097).  In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at the plaintiff's expense (2) the

defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying.  *Id.* at 1265–66.

Plaintiff argues that Defendant has received the benefit of "the right to possess and use the [parking structure]."  (Pl.'s Resp. at 15.)  Plaintiff misconstrues the meaning of the term "benefit." The Restatement of Contracts provides that "[a] party is entitled to restitution . . . only to the extent that he has conferred a benefit on the other party by way of part performance or reliance." Restatement (Second) of Contracts § 370 (1981).  The following illustration is helpful:

> A contracts to sell B a machine for $100,000.  After A has spent $40,000 on the manufacture of the machine but before its completion, B repudiates the contract. A cannot get restitution of the $40,000 because no benefit was conferred on B.

*Id.* cmt. a, illus. 2.  Here, the parties' failure to come to an agreement regarding the terms of the lease is analogous to party B's repudiation in the example because, in both cases, the contractual breakdown occurred *prior* to the conferral of any benefit.  Restitution would be appropriate here if, for example, Defendant had occupied the premises while the parties had negotiated the terms of the lease, but never paid rent for its occupancy.  Instead, Defendant refused to occupy the premises, so it cannot be said to have benefitted from the mere fact that the parties agreed Defendant had "the right to possess and use" the parking structure.  Additionally, even if such a right could be said to constitute a benefit, Plaintiff has presented no evidence of what the fair market value of such a right might be.  (*See* Pl.'s Resp.)  Defendant is entitled to summary judgment on this claim.[7]

---

[7]It appears that the more appropriate equitable remedy in this case may have been promissory estoppel.  *See generally Neiss v. Ehlers*, 899 P.2d 700, 707 (Or. App. 1995) (holding

### c.     *Dueling Declaratory Judgment Claims*

Plaintiff's request for a declaratory judgment that "[Defendant] is obligated to execute the [parking structure] [l]ease in the form tendered by [Plaintiff]" is mooted by the determination that this court cannot enforce Amendment Four's "agreement to agree." (*See* Notice of Removal, Ex. 4 ¶ 23 [Compl.]; Pl.'s Resp. at 13.) Moreover, the court notes an absence of any explanation by Plaintiff as to what the "form tendered by [Plaintiff]" is, why this mysterious form ought to bind Defendant, or what might empower this court to so act. (*See* Notice of Removal, Ex. 4 [Compl.]; Pl.'s Resp.) Accordingly, Defendant is entitled to summary judgment on this claim.

Defendant has abandoned its prayer for a declaratory judgment specifying certain terms of a lease between the parties. (Def.'s Reply at 16.) However, Defendant still seeks an alternative declaratory judgement that "it has no obligation to [Plaintiff] whatsoever with respect to the [parking structure], including but not limited to any obligation to pay rent, pursuant to the Option Agreement or otherwise." (Answer and Countercl. ¶ 14; Def.'s Br. 24–25.) This court's determination that the Option Agreement evinces no accord with regard to essential terms of a parking structure lease renders Defendant's counterclaim moot. (*See Analysis* § 2a, *supra.*)

### 3.     *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      PLAINTIFF's motion (#37) is DENIED.

---

that "promissory estoppel can apply, under appropriate circumstances, to promises that are indefinite or incomplete, including agreements to agree").

2.      DEFENDANT's motion (#36) is GRANTED in part and DENIED in part.

Plaintiff's claims are dismissed.  Defendant's counterclaim is dismissed as moot.

3.      The clerk shall forthwith enter judgment in favor of Defendant and against

Plaintiff, dismissing Plaintiff's claims with prejudice.  The judgment shall also

dismiss Defendant's counterclaim as moot.  Defendant may have its costs by filing

a bill of costs within eleven days of the date of this order.

Dated this 8th day of June, 2006

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge